UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIJAY PATEL, *Individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC., *et al.*,<br><br>Defendants. | Civil Action No.<br><br>22-4915 (BRM) (LDW) |
| DENNIS DEAN LAFFOON, *Individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC., *et al.*,<br><br>Defendants. | Civil Action No.<br><br>22-5744 (BRM) (LDW)<br><br>**OPINION** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court are Motions for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel filed by Charles Bethune III, Sjunde AP-Fonden ("AP7"), Dr. Rahul Saraf, Darren Wright, Henry Gotlob, and Maria Scagliotti. (ECF Nos. 12, 13, 18, 20, 21, 22).[1] The Court heard oral argument on the motions on November 18, 2022. Having considered the movants' written submissions and argument, and for the reasons set forth below,

---

[1] All citations to docket entries refer to *Patel v. Coinbase Global, Inc.*, Civ. A. No. 22-4915 (BRM).

AP7's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead and Liaison Counsel is **GRANTED**. All other pending motions that were not previously withdrawn are **DENIED**.[2]

## I.   BACKGROUND

The *Patel* and *Laffoon* cases are putative securities fraud class actions brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), against Coinbase Global, Inc., which provides financial infrastructure and technology products and services for the cryptocurrency economy, and certain of its executives. Plaintiffs generally allege that defendants made false or misleading statements and/or failed to disclose that: (i) Coinbase custodially held crypto assets on behalf of its customers, which assets Coinbase knew or recklessly disregarded could qualify as the property of a bankruptcy estate; (ii) Coinbase allowed Americans to trade digital assets that Coinbase knew or recklessly disregarded should have been registered as securities with the SEC; (iii) Coinbase had plans to, and did in fact, engage in proprietary trading of crypto assets; and (iv) as a result, Coinbase's public statements about its operations were materially false and misleading. (Compl. ¶ 3, ECF No. 1). Following a May 10, 2022 public disclosure that Coinbase's custodially held crypto assets may be considered to be the property of a bankruptcy estate and a July 25, 2022 *Bloomberg* article reporting that Coinbase faced an SEC "probe into whether it improperly let Americans trade digital assets that should have been registered as securities," the price of Coinbase's Class A common stock declined. (*Id.* ¶¶ 40-41, 44-45). Following a September 22, 2022 *Wall Street Journal* article reporting that Coinbase was

---

[2] These motions are considered non-dispositive, *see, e.g.*, *Roofers' Pension Fund v. Papa*, Civ. A. No. 16-2805, 2017 WL 1536222, at *3 (D.N.J. Apr. 27, 2017), and movants' counsel each confirmed at oral argument that there is no objection to the undersigned proceeding in accordance with 28 U.S.C. § 636(b)(1)(A). (Nov. 18, 2022 Tr. at 14:11-19; 28:6-18; 36:20-23, ECF No. 48).

engaging in proprietary trading, the stock price again dropped. (*Laffoon* Compl. ¶¶ 61-64, Civ. A. No. 22-5744, ECF No. 1).

The first-filed *Patel* action was initiated on August 4, 2022. In accordance with the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A)(i), the Pomerantz law firm published notice of the filing of the class action complaint in *Global Newswire* on August 4, 2022. (Przybylowski Decl., Ex. B, ECF No. 21-3). The notice advised Coinbase shareholders of the pendency of the action, the claims asserted therein, the time period of the action, and their right to file any Motions for Appointment as Lead Plaintiff on or before October 3, 2022. (*Id.*). Accordingly, on October 3, 2022 institutional investor AP7 and individual investors Bethune, Saraf, Wright, Gotlob, and Scagliotti timely moved to be appointed Lead Plaintiff. Wright, Gotlob, and Scagliotti subsequently filed notices informing the Court that they do not appear to have the largest financial interest in the action as defined by the PSLRA and do not oppose the competing Motions for Appointment as Lead Plaintiff. (ECF Nos. 23, 24, 25). Bethune, AP7, and Saraf each filed oppositions to the remaining Motions for Appointment as Lead Plaintiff on October 24, 2022, (ECF Nos. 26, 27, 28), and replies on October 31, 2022. (ECF Nos. 30, 31, 32).

## II. DISCUSSION

### A. Consolidation

The PSLRA directs the Court to first determine whether to consolidate related actions before appointing a lead plaintiff and approving lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(ii). All movants seek to consolidate the *Patel* and *Laffoon* matters, and there is no opposition to consolidation. Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, the Court may consolidate actions that "involve a common question of law or fact." "Neither the PSLRA nor Rule 42 requires that pending suits be identical before they can be consolidated." *In re Lucent*

*Tech., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001). Consolidation is routinely granted where securities class actions "involve common questions of law and fact, and consolidation will promote efficiency and avoid unnecessary costs or delay." *City of Warren Gen. Employees' Retirement Sys. v. Celgene Corp., Inc.*, Civ. A. Nos. 18-4772, 18-8785, 2018 WL 4629570, at *1 (D.N.J. Sept. 26, 2018).

Such is the case here. The *Patel* and *Laffoon* matters assert the same claims on behalf of Coinbase investors, based on substantially the same alleged conduct, for violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Although the *Laffoon* action names one additional individual defendant, Emilie Choi, and asserts a putative class period that is two months longer than the class period in *Patel*, common questions of law and fact predominate over these minor discrepancies, and the Court finds that consolidation is appropriate. *See Stires v. Eco Science Solutions, Inc.*, Civ. A. Nos. 17-3707, 17-3760, 17-5161, 2018 WL 5784817, at *3 (D.N.J. Feb. 14, 2018) (consolidating securities class actions proposing different class periods because "[d]espite minor differences, the complaints center on the same set of operative facts during substantially the same time period"); *Roby v. Ocean Power Tech., Inc.*, Civ. A. Nos. 14-cv-3799, 14-cv-3815, 14-cv-4015, 14-cv-4592, 2015 WL 1334320, at *3 (D.N.J. Mar. 17, 2015) (consolidating securities class actions where "[a]ll four cases involve the same subject matter, are based on substantially the same conduct, and largely name the same defendants").

### B. Motions to Appoint Lead Plaintiff

The PSLRA sets forth the parameters for the appointment of lead plaintiff in a securities class action. Specifically, the Court must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (termed the "most adequate plaintiff"). 15 U.S.C. § 78u-

4(a)(3)(B)(i). The PSLRA "establishes a two-step process for appointing a lead plaintiff: the court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). The presumptive lead plaintiff is

> the person or group of persons that –
>
> > (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted, however, upon a showing that the movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

### 1. Largest Financial Interest

Although there is "no formula" for determining which movant has the largest financial interest, "courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *In re Cendant*, 264 F.3d at 262. "[C]ourts in this circuit have accorded the third element, the largest financial loss, the greatest weight." *Roby*, 2015 WL 1334320, at *5; *see Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, 529 F. Supp. 3d 385, 396 (E.D. Pa. 2021) ("Of these factors, courts focus most strongly on the losses suffered.").

Movant AP7 bought and retained 141,484 shares of Coinbase stock at a total cost of $19,032,411.93 and sustained a loss of $10,015,636.79. (Cecchi Decl., Ex. B, ECF No. 20-4).

Movant Saraf purchased 254,210 shares at a total cost of $39,819,038.05, retained 68,388 shares, and sustained a loss of $7,046,068.33. (Seeger Decl., Ex. C, ECF No. 22-4). Movant Bethune purchased 1,914 shares at a total cost of $737,425.72, retained 1,300 shares, and sustained a loss of $470,789.01. (Giblin Decl., Ex. B, ECF No. 15-2). Measured in absolute dollars, AP7 suffered the largest loss.

Saraf and Bethune, however, ask the Court to evaluate the respective movants' losses relative to their total assets. *See Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, Civ. A. No. 00-152, 2000 WL 486956, at *1 (D.N.J. Apr. 24, 2000) (analyzing financial loss in absolute dollars and as "a percentage of a plaintiff's net worth"). Viewed through this lens, AP7's $10 million Coinbase loss represents 0.01% of its approximately $80 billion in assets under management, while Saraf's $7 million loss represents more than 50% of the total value of his equities portfolio and Bethune's $470,000 loss represents nearly 60% of the value of his 401(k). (Saraf Decl. ¶ 2, ECF No. 28-1; Nov. 18, 2022 Tr. at 32:23 –33:2). Saraf and Bethune contend that their greater relative losses incentivize them to more vigorously pursue litigation on behalf of the putative class. In some circumstances, relative loss may be a relevant factor in identifying the presumptive lead plaintiff. But where, as here, individuals are pitted against a large institutional investor in a bid to be appointed lead plaintiff, the sizeable difference in their total assets generates a measure of relative loss that would favor almost any individual shareholder other than Warren Buffett. Thus, in cases like this one, evaluating the movants' financial interests based on relative loss would frustrate "Congress's preference that institutional investors serve as lead plaintiffs in securities class actions." *Halman Aldubi*, 529 F. Supp. 3d at 395. *See In re Netflix, Inc. Sec. Litig.*, Nos. 12-0225 SC, 12-1030 LHK, 2012 WL 1496171, at *7 (N.D. Cal. Apr. 27, 2012) ("[A] proportional measure [of loss] would result in individual investors nearly always having the largest

financial stake relative to institutional investors whose holdings frequently amount to hundreds of millions of dollars. Such a result would defeat the PSLRA's aim of putting institutional investors at the helm of more private securities class actions."). The Court instead follows the more commonly accepted, post-*Campbell Soup* practice of calculating the "largest financial interest" in terms of absolute dollar loss. *See, e.g.*, *Montesano v. Eros Int'l PLC*, Civ. A. Nos. 19-14125, 19-14445, 19-18547, 2020 WL 1873015, at *3 (D.N.J. Apr. 14, 2020) (evaluating losses of institutional and individual investor lead plaintiff candidates in dollar terms and appointing institutional investor as lead plaintiff); *Roby*, 2015 WL 1334320, at *5 (same). Accordingly, the Court finds that AP7 has the largest financial interest in the relief sought by the class.

### 2.  Typicality and Adequacy

The Court next determines whether AP7 otherwise satisfies the requirements of Rule 23. This analysis is "confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy" and "need not be extensive." *In re Cendant*, 264 F.3d at 263, 264. With respect to typicality, the Court "should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims of that movant are based differ from that upon which the claims of other class members will perforce be based." *Id.* at 265 (quotation and alterations omitted). Here, AP7 seeks recovery for losses on its investments in Coinbase stock that occurred as a result of alleged omissions and/or misrepresentations by defendants, as do other putative class members. Neither AP7's circumstances nor its claims differ from those of the proposed class.

With respect to adequacy, the Court considers whether the movant "has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the

class." *Id.* (quotation and alterations omitted). AP7 is an experienced litigant in securities fraud class actions, and it assures the Court that its financial loss motivates it to pursue claims on behalf of the class. *See Lewis v. Lipocine Inc.*, Civ. A. Nos. 16-4009, 16-4067, 2016 WL 7042075, at *5 (D.N.J. Dec. 2, 2016); *see also* Cecchi Reply Decl., Ex. B, ECF No. 31-3 (listing cases in which AP7 has been appointed lead plaintiff and/or certified as a class representative). AP7 is represented by Kessler Topaz Meltzer & Check, LLP and Carella, Byrne, Cecchi, Brody & Agnello, P.C.; the Court has reviewed the firms' resumes and is satisfied that AP7 has selected sophisticated and qualified counsel. (Cecchi Decl., Exs. D, E, ECF Nos. 20-6, 20-7). Finally, there is nothing before the Court to suggest that there is a conflict between AP7's claims and those of the proposed class. Having made a *prima facie* showing of both typicality and adequacy under Rule 23, and having the largest financial interest in the relief sought in this action, AP7 is the presumptive lead plaintiff.

### 3. Rebutting the Presumption

"Once a presumptive lead plaintiff is located, the court should then turn to the question whether the presumption has been rebutted" by means of "'proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *In re Cendant*, 264 F.3d at 268 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). "The Third Circuit has stressed that the PSRLA requires more than mere assertions in order to rebut the presumptive lead plaintiffs' status. Rather, the PSLRA requires 'actual proof' that the presumptive lead plaintiffs are inadequate representatives of the class or subject to unique defenses." *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 402 (D. Del. 2014) (citing *In re Cendant*, 264 F.3d at 269-70). Movants Saraf and Bethune argue that AP7 cannot adequately serve as lead plaintiff because it (1) lacks standing to

pursue securities fraud claims and (2) allegedly frustrated the progress of discovery in other actions.

### a.   Standing

Relying on *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), movants Saraf and Bethune argue that AP7 lacks Article III standing to bring securities fraud claims because it does not directly own Coinbase shares and therefore did not itself suffer an injury in fact as a result of defendants' alleged misrepresentations or omissions. The Court notes at the outset that AP7 has been appointed lead plaintiff in twelve other actions, (Cecchi Reply Decl., Ex. B), overcoming standing challenges raised by competing movants several times. *See, e.g.*, *Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293-LJL, 2020 WL 3127808, at *7 (S.D.N.Y. June 12, 2020) (rejecting standing challenge and appointing AP7 as lead plaintiff); *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *6 (S.D.N.Y. Sept. 19, 2019) (same); *Hachem v. Gen. Elec. Inc.*, No. 17 Civ. 8457 (JMF), ECF No. 140 (S.D.N.Y. May 23, 2018) (same); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, Nos. 14-CIV-81507-WPD, 14-CIV-81064-WPD,14-CIV-81076-WPD, 2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014) (same).[3] In light of this history, movants' contention that AP7 is subject to a unique standing defense amounts to little more than speculation

---

[3] Only one Court has declined to appoint AP7 as lead plaintiff on standing grounds. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011). The *Pipefitters* Court so ruled because "arguments *could* be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class." *Id.* (emphasis added). As the PSLRA requires more than speculation to rebut the lead plaintiff presumption, the Court does not find *Pipefitters* or its predecessor, *Baydale v. Am. Express Co.*, No. 09 Civ. 3016 (WHP), 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009) to be persuasive authority. *See OFI Risk Arbitrages*, 63 F. Supp. 3d at 403 (rejecting *Baydale* because it "rel[ied] on mere speculation" and failed to "appropriately appl[y] the burden of proof"); *Ocwen*, 2014 WL 7236985, at *3 (declining to follow *Pipefitters* and *Baydale*).

and falls short of the actual proof required under the PSLRA to rebut the presumption in favor of AP7 as lead plaintiff

In any event, in *Huff,* the Second Circuit held that an investment advisor lacked standing to bring claims on behalf of its clients, who were the beneficial owners of securities at issue, but recognized that "prudential exceptions to the 'injury in fact' requirement . . . permit third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." 549 F.3d at 109. AP7 is a Swedish asset manager "acting on behalf of the AP7 Equity Fund in this litigation." (Gröttheim Cert. n.1, ECF No. 20-3). AP7 "is obligated by law to protect and act on behalf of the underlying Equity fund [which is] a pool of assets not capable of taking any legal action" itself. *Ocwen*, 2014 WL 7236985, at *3. The CEO of AP7 confirms that "AP7 has full power and authority to bring suit to recover for its investment losses." (Gröttheim Cert. ¶ 4). Given the close relationship between AP7 and its Equity Fund and the Fund's inability to bring suit in its own name, movants' suggestion that "defendants will exploit AP7's standing defects" under *Huff* falls further into the realm of speculation. *Cf. Bricklayers' & Allied Craftworkers Local #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*, Nos. 22 Civ. 1014 (VM), 22 Civ. 1876 (VM), 2022 WL 1515451, at *4 (S.D.N.Y. May 13, 2022) (rejecting standing challenge to German "asset manager bringing suit on behalf of its injured investment fund" where "the Fund actually lacks authority to sue on its own" and appointing it as lead plaintiff); *Weston v. DocuSign, Inc.*, Case No. 22-cv-00824-WHO, 2022 WL 1301770, at *4-5 (N.D. Cal. Apr. 18, 2022) (applying prudential exception to standing to Luxembourg investment manager acting on behalf of funds that "have no legal

authority under Luxembourgian law to pursue such claims on their own" and appointing it lead plaintiff).[4]

### b. Alleged Discovery Misconduct

Similarly, Saraf and Bethune contend that AP7 may have spoliated evidence and refused to facilitate the taking of discovery from its foreign investment managers in other securities class actions. There being no evidence before the Court that these allegations have actually been adjudicated, much less that a finding or sanction has been entered against AP7, movants' conjecture regarding future discovery misconduct fails to establish that AP7 is incapable of pursuing this action on behalf of the putative class. At oral argument, counsel for AP7 confirmed on the record that it will participate in discovery in this action as if it were a party based in the United States, and the Court intends to hold AP7 to that standard. (Nov. 18, 2022 Tr. at 8:20-9:9). As the competing movants have failed to rebut the presumption that AP7 is the most adequate plaintiff, the Court will appoint AP7 as lead plaintiff.

### C. Motion to Approve Lead Counsel

The PSLRA permits the lead plaintiff in a securities fraud class action to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). AP7 has selected Kessler Topaz to serve as lead counsel and Carella Byrne to serve as liaison counsel. No party has

---

[4] The cases Saraf and Bethune rely on are not to the contrary. *Plymouth County Retirement Association v. Array Technologies, Inc.*, No. 21 Civ. 4390 (VM), 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) and *Theodore v. Purecycle Technologies, Inc.*, Case Nos. 6:21-cv-809-PGB-GJK, 6:21-cv-818-PGB-GJK, 2021 WL 5259840 (M.D. Fla. Aug. 5, 2021), considered the third-party standing of Erste Asset Management GmbH premised on an assignment, which is not at issue here. In *Gross v. AT & T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 3500496, at *3 (S.D.N.Y. July 31, 2019), the Court rejected Belgian investment advisor KBC Asset Management NV's motion to be appointed lead plaintiff on standing concerns because "[a]lthough KBC appears to have a close relationship to the Funds, there is no apparent barrier to the Funds' ability to assert their own interests." By contrast, the AP7 Equity Fund is "not capable of taking any legal action" itself. *Ocwen*, 2014 WL 7236985, at *3.

challenged either firm's fitness for their respective roles. As evidenced by the firms' resumes and litigation track records, AP7's counsel has the requisite experience in securities litigation to competently pursue relief on behalf of plaintiffs. Accordingly, the Court approves AP7's choice of lead and liaison counsel.

### III.   CONLCUSION

For the reasons set forth above, AP7's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of its Selection of Counsel (ECF No. 20) is **GRANTED**. The remaining Motions at ECF Nos. 13 and 22 are **DENIED**.

Dated:      December 12, 2022

                                         *s/ Leda Dunn Wettre*
                                         Hon. Leda Dunn Wettre
                                         United States Magistrate Judge